UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ARLINTHIA WHITE, Individually and  ) <br> as Personal Representative of the Estate  ) <br> of Derrick Ford, Deceased,  ) <br>  ) <br> Plaintiff,  ) <br>  ) <br> v.  ) <br>  ) <br> MARK GERARDOT, in his  ) <br> Individual Capacity,  ) <br>  ) <br> Defendant.  ) | CASE NO. 1:05-CV-382 |

## OPINION AND ORDER

### I. INTRODUCTION

In the early morning hours of January 10, 2004, Fort Wayne Police Detective Mark Gerardot shot and killed Derrick Ford after a fight broke out outside a Veterans of Foreign Wars ("VFW"). This incident led Ford's mother, Arlinthia White, to sue Gerardot under 42 U.S.C. § 1983, claiming that Gerardot used excessive force in violation of Ford's Fourth and Fourteenth Amendment rights.[1]

On October 20, 2006, Gerardot filed a motion for summary judgment, arguing that he did not use excessive force when he shot Ford and that he is entitled to qualified immunity. (Docket # 18.) White filed a response in opposition to the motion for summary judgment on November 27, 2006, supporting her argument with evidence that included the affidavits of various witnesses to the shooting, the Fort Wayne Police Department's internal affairs interview of Gerardot following the shooting, the postmortem examination of Ford, and the affidavit of

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. §§ 1331 and 1343. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

White's expert. (Docket ## 27-28.) On December 15, 2006, Gerardot filed a reply to the motion for summary judgment along with a motion to strike White's evidence. (Docket ## 37, 39.)

After allowing White additional time to supplement the record with the deposition of Gerardot, both the motion for summary judgment and the motion to strike are now fully briefed. Because White's opposition to the motion for summary judgment relies upon evidence subject to Gerardot's motion to strike, the Court will first consider the motion to strike before ruling on the motion for summary judgment. For the following reasons, Gerardot's motion to strike will be GRANTED in part and DENIED in part, and the motion for summary judgment will be likewise be GRANTED IN PART and  DENIED IN PART.

## II. MOTION TO STRIKE

Gerardot asks that the Court strike certain paragraphs in the affidavits of Dana L. Jones, Sr., Kevin D. Tinsley, and Javon Thomas, arguing that the information contained in these affidavits is not based on personal knowledge. Gerardot also requests that the Court strike the internal affairs interview and the postmortem examination because they contain inadmissible hearsay, were unsworn, and were not authenticated. Finally, Gerardot asks that the Court strike the entire affidavit of White's expert, Werner U. Spitz, M.D., because it fails to comply with Federal Rule of Evidence 702 and the guidelines set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). These arguments will be addressed in turn.

### A. Affidavits of Jones, Tinsley, and Thomas

Gerardot first requests that the Court strike certain paragraphs in the affidavits of Jones, Tinsley, and Thomas, who were witnesses to the shooting. Gerardot maintains that the information contained in these affidavits should be stricken under Federal Rule of Civil

Procedure 56(e) because they were not based on the witnesses' personal knowledge.

## 1. Legal Standard

Federal Rule of Civil Procedure 56(e) provides that affidavits filed in opposition to summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). To be based on personal knowledge, the affidavit testimony must be "grounded in [the affiant's] observation or other first-hand personal experience." *Wagner ex rel. Wagner-Garay v. Fort Wayne Cmty. Schs.*, 255 F. Supp. 2d 915, 917 (N.D. Ind. 2003) (quoting *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); *E.E.O.C. v. Admiral Maint. Serv., L.P.*, 174 F.R.D. 643, 647 (N.D. Ill.1997)). Statements that are outside the affiant's personal knowledge–for example, statements that are the result of speculation or conjecture–do not comply with Rule 56(e) and therefore cannot defeat a summary judgment motion. *See Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999); *Peniauguas v. Aldon Cos., Inc.*, No. 2:04-CV-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006).

## 2. Jones Affidavit

Gerardot maintains that the following paragraphs in Jones's affidavit are outside of Jones's personal knowledge and should be stricken:

> 9. Derrick Ford had his right hand on the passenger side door handle of the green Taurus.
> . . . .
> 12. Derrick let go of the car door handle and turned around with his hands in the air.
> . . . .
> 14. Derrick Ford had his hands in the air.
> . . . .
> 17. Derrick Ford did not have a gun in his possession that night.

3

>[18]. Derrick Ford and Officer Gerardot had run-ins with each other at Chapel Oaks and Eden Green prior to the morning of January 10, 2004.[2]

(Aff. of Dana Jones, Sr. ("Jones Aff.") ¶¶ 9, 12, 14, 17.)

Specifically, Gerardot contends that Jones could not have had personal knowledge of the information contained in paragraphs 9, 12, and 14 because Jones also stated in his affidavit that he was on the other side of the car when the events occurred, and therefore, according to Gerardot, Jones could not possibly have seen Ford's hands. (Jones Aff. ¶ 8.) Gerardot also attacks Jones's statement that Ford did not have a gun in his possession that night, arguing that Jones "would have had to conduct a 'pat down' of Ford to know if Ford had a gun." (Def.'s Mem. in Supp. of Mot. to Strike 3.)

Contrary to Gerardot's arguments, paragraphs 9, 12, and 14 were based on Jones's first-hand knowledge and observations of Ford while on the other side of the car, presumably only feet away from Ford. *See Halfhill v. Ne. Sch. Corp.*, 472 F.3d 496, 498 (7th Cir. 2006) (noting that on a motion for summary judgment, the court "consider[s] the facts in the light most favorable to . . . the non-moving party, and draw[s] all reasonable inferences in his favor"). Similarly, Jones's statement that Ford did not have a gun was ostensibly based on his observations of Ford from the time the two men arrived at the VFW club until the time of the shooting. Instead, Gerardot's arguments regarding whether Jones could clearly see Ford's hands and whether Jones could conclusively say that Ford did not have a gun are better characterized as an attack on Jones's credibility, and the Court cannot render such determinations at the summary judgment stage. *See Gaskins v. Vencor, Inc.*, No. IP99-1122-C-T/G, 2001 WL 300517, at *4

---

[2] This paragraph is also numbered 17 in Jones's affidavit; however, for ease of discussion, the Court will refer to this paragraph as paragraph 18.

4

(S.D. Ind. Mar. 26, 2001) ("[A]dmissibility–first hand knowledge of a fact or an event–must be distinguished from credibility–the conclusive establishment of such fact or event. . . . [W]hether a fact has been conclusively established is a matter of credibility for the trier of fact to decide."). Of course, Jones, as well as all other witnesses, will be subject to cross-examination on what they perceived that morning.

Nevertheless, Gerardot's argument that paragraph 18 should be stricken for lack of personal knowledge is persuasive, as Jones fails to specify any facts demonstrating that he had personally observed the purported run-ins between Ford and Gerardot. *See Lee v. Wal-Mart Stores, Inc.*, No. 3:92cv0465 AS, 1994 WL 899240, at *6 (N.D. Ind. Apr.12, 1994) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (quoting *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983))). Accordingly, paragraph 18 will be stricken.

Finally, Gerardot maintains that the term "hands in the air," which is found in paragraphs 12 and 14, should be stricken because it is vague and ambiguous. However, at this stage of the litigation, the Court must draw all reasonable inferences in White's favor. *See Halfhill*, 472 F.3d at 498 (7th Cir. 2006). Accordingly, for purposes of the current motion for summary judgment, the Court does not believe that the term is vague or ambiguous and instead will interpret the phrase "hands in the air" to mean that Ford's hands were at or above his head level as he was turning around to face Gerardot. *See Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1185 n.3 (D. Haw. 2003) (finding the argument that the plaintiff did not "sufficiently describe the position of his hands" inappropriate at the summary judgment stage "[b]ecause the court interprets the facts in

5

the light most favorable to the nonmoving party . . . .").

### 3. Tinsley Affidavit

Gerardot maintains that the following paragraphs in Tinsley's affidavit are outside Tinsley's personal knowledge and should be stricken:

> 10. Derrick Ford did not have a gun on him.
> . . . .
> 12. Officer Gerardot had a vendetta against Derrick Ford, me, and my friends.
> 13. When my friends and I, including Derrick Ford, would be at Chapel Oaks, Officer Gerardot would mess with us all the time, pulling our pants and leering at us, harassing us. That also happened to Derrick Ford.

(Aff. of Kevin D. Tinsley ("Tinsley Aff.") ¶¶ 10, 12-13.)

Like Jones's affidavit above, the Court believes that there are sufficient facts in Tinsley's affidavit to demonstrate that he had personal knowledge that Jones did not have a gun. Specifically, Tinsley indicates that Ford was among the members of his "group" that morning; therefore, his statements are ostensibly based on his observations of Ford while outside of the VFW. (Tinsley Aff. ¶ 5.) Accordingly, Gerardot's argument that Tinsley could not know for certain whether Ford had a gun is in the nature of an attack on Tinsley's credibility, which of course, is not an appropriate argument at this stage. *See Lee*, 1994 WL 899240, at *6.

Furthermore, Gerardot conclusorily asserts that Tinsley's statement in paragraph 13 is speculative. However, paragraph 13 does not appear to be speculative, as it is seemingly based on Tinsley's observations of Gerardot's actions towards Tinsley and Ford at Chapel Oaks.

Nevertheless, paragraph 12 must be stricken because Tinsley's subjective belief that Gerardot had a vendetta against Ford is not based on personal knowledge. *See Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 483 (7th Cir. 1991) (finding that a statement of opinion or belief "is not a specific fact which gives rise to a genuine dispute"); *Alexander v. Wis. Dep't of Health &*

6

*Family Servs.*, No. 99-C-0429-C, 2000 WL 34239243, at *11 (W.D. Wis. May 23, 2000) (quoting *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir.1999)) (discarding statements that the defendants were "out to get" the plaintiff because such opinions were outside of the affiant's personal knowledge).

### 4. Thomas Affidavit

Finally, Gerardot maintains that paragraph 6 of Thomas's affidavit, which states that "Derrick Ford was attempting to get into the front passenger door," should be stricken because it is speculative and not based on Thomas's personal knowledge. (Aff. of Javon Thomas ("Thomas Aff.") ¶ 6.) Contrary to Gerardot's argument, Thomas's statement was ostensibly based on his personal observations of Ford, as Thomas also asserts that he went with Ford to the vehicle just prior to Gerardot shooting Ford. (Thomas Aff. ¶ 5.) Accordingly, paragraph 6 is deemed within Thomas's personal knowledge and will not be stricken.

### B. Internal Affairs Interview and Postmortem Examination

Gerardot also requests that his internal affairs interview with the Fort Wayne Police Department and the postmortem examination final report be stricken because they contain inadmissible hearsay, were unsworn, and were not authenticated. Because these materials are not necessary for the Court to rule on the pending motion for summary judgment, the Court deems Gerardot's motion to strike the internal affairs interview and the postmortem examination to be moot.

### C. Dr. Spitz's Affidavit

Finally, Gerardot maintains that Dr. Spitz's affidavit should be stricken in its entirety because it fails to meet the standards for expert testimony established in Federal Rule of

7

Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Again, the Court deems Gerardot's motion to strike Dr. Spitz's affidavit to be moot, as the Court does not require the information contained in Dr. Spitz's affidavit to rule on the pending motion for summary judgment. Nevertheless, the Court recognizes that these issues regarding Dr. Spitz's testimony might arise again, and if so, the Court will address them in a hearing according to Federal Rule of Evidence 104(a).

### D. Conclusion

In sum, the Court will DENY Gerardot's motion to strike paragraphs 9, 12, 14, and 17 of Jones's affidavit; paragraphs 10 and 13 of Tinsley's affidavit, and paragraph 6 of Thomas's affidavit. However, the Court will GRANT Gerardot's motion to strike paragraph 18 of Jones's affidavit and paragraph 12 of Tinsley's affidavit. Finally, the Court will DENY AS MOOT Gerardot's motion to strike the internal affairs interview, the postmortem examination, and Dr. Spitz's affidavit. Accordingly, the Court now turns to Gerardot's motion for summary judgment.

### III. MOTION FOR SUMMARY JUDGMENT

In his motion for summary judgment, Gerardot maintains that he did not use excessive force when he shot and killed Ford, and that, in any event, he is entitled to qualified immunity. Gerardot also claims that White's request for punitive damages should be barred. However, because White presents evidence that Ford was surrendering with his hands in the air when Gerardot shot him, Gerardot's motion for summary judgment on White's § 1983 claims must be denied.[3]

---

[3] Gerardot also moves for summary judgment on the various Indiana State law claims asserted by White in her complaint. Specifically, Gerardot maintains that he is entitled to immunity under Ind. Code § 34-13-3-3(8). White apparently has abandoned her Indiana state law claims, as she fails to even mention the state law claims in her response to Gerardot's motion for summary judgment. *See Palmer v. Marion County*, 327 F.3d 588, 597-99 (7th Cir.

**A. Factual Background[4]**

At approximately 2:30 a.m. on January 10, 2004, Ford and his friends, including Jones, Tinsley, and Thomas, left the VFW on 2441 Winter Street in Fort Wayne Indiana. (Jones Aff. ¶¶ 2, 4; Tinsley Aff. ¶ 2; Thomas Aff. ¶¶ 2-3.) While the friends spoke outside the VFW, they heard gunshots coming from the west side of Winter Street where a group of people were gathered. (Jones Aff. ¶¶ 4-5; Tinsley Aff. ¶ 4; Thomas Aff. ¶ 4.) Apparently, two individuals were involved in a verbal altercation, and one of the individuals shot the other.[5]

Upon hearing the gunshots, Ford, Jones, Tinsley, and Thomas decided to leave, so they went towards the vehicle that Jones had driven to the VFW. (Jones Aff. ¶ 6; Tinsley Aff. ¶ 5; Thomas Aff. ¶ 5.) Gerardot followed the men, running past the group of people on the west side of Winter Street, and eventually met up with the men as they were attempting to enter the vehicle.[6] (Jones Aff. ¶ 7-8; Tinsley Aff. ¶ 6.) As Jones stuck his keys into the driver's side door lock, he heard someone exclaim, "Freeze!" and observed Ford, who had placed his right hand on the front passenger door handle, let go of the handle and turn around with his hands in the air.

---

2003) (finding that claims not addressed in a summary judgment opposition brief were abandoned). Accordingly, Gerardot's motion for summary judgment on the Indiana state law claims will be granted.

[4] For summary judgment purposes, the facts are recited in the light most favorable to White, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

[5] Gerardot tells a different account of these events, alleging that he had been dispatched to the VFW in regards to a possible gang fight. (Gerardot Aff. ¶¶ 4-5.) After his arrival, he observed a car parking in the middle of Winter Street, blocking traffic. (Gerardot Aff. ¶ 12.) A crowd of more than one hundred people gathered around the car, and a fight broke out. (Gerardot Aff. ¶ 12.) Gerardot claims that before the shots on the west side of Winter Street were fired, he saw a black male, who was standing on the east side of the crowd, hold a gun above his head and fire shots down into the crowd. (Gerardot Aff. ¶¶ 14, 17.) Gerardot also alleges that after the gunshots on the west side were fired, the black male again fired shots into the crowd. (Gerardot Aff. ¶ 17.)
   White contests this version of the events, specifically maintaining that no casings were recovered near the area where Gerardot claims he saw the black male firing shots.

[6] Gerardot maintains that he followed the group because he believed that Ford was the man who fired shots into the crowd. (Gerardot Aff. ¶¶ 18, 22.)

(Jones Aff. ¶¶ 9-10, 12, 14.) As Ford was turning with his hands in the air, Gerardot shot him, causing Ford to drop to his knees, and then he shot Ford several more times.[7] (Jones Aff. ¶¶ 13-15.)

## B. Legal Standard

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

---

[7] Gerardot's account of the events leading up to the shooting varies greatly from this account. Gerardot maintains that when he met up with the men, Ford stood with his back towards him, concealing both hands in front of his body near his waistband. (Gerardot Aff. ¶ 22.) Gerardot claims that although he continuously ordered Ford to "show me your hands," Ford did not comply; instead Ford allegedly moved his hands in front of him, causing Gerardot to believe that Ford was either fixing a jam or reloading a gun. (Gerardot Aff. ¶¶ 23, 25-26.) After purportedly looking over his shoulder and making eye contact with Gerardot, in what Gerardot believed was an attempt to "check" his position, Ford started to turn towards Gerardot with his hands at his mid-section. (Gerardot Aff. ¶¶ 26, 28.) Thinking he saw a gun in Ford's hand, Gerardot shot Ford. Gerardot Aff. ¶ 28.)

**C. Discussion**

<u>1. Excessive Force Claim</u>

White filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that Ford's Fourth and Fourteenth Amendment rights to be free from unreasonable seizure were violated through Gerardot's purported excessive use of force.[8] To prevail on her § 1983 claim, White must prove that Gerardot: (1) acted under color of state law, and (2) deprived Ford of some right under the Constitution or the laws of the United States. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982); *Ineco v. City of Chicago*, 286 F.3d 994, 997-98 (7th Cir. 2002); *Harbours Pointe of Nashotah, LLC v. Vill. of Nashotah*, 278 F.3d 701, 704 (7th Cir. 2002). It is undisputed that Gerardot acted under the color of state law.

Claims that officers used excessive force during the course of a seizure are analyzed under the Fourth Amendment and its reasonableness standard.[9] *Abdullahi v. City of Madison*,

---

[8] Apparently Gerardot believes that White is asserting a separate Fourteenth Amendment claim apart from her excessive force claim, as he specifically moves for summary judgment on White's Fourteenth Amendment claim, alleging that nothing he did that night "shocks the conscious." (Def.'s Mem. in Supp. of Mot. for Summ. J. 15.) White, however, does not assert any separate Fourteenth Amendment grounds for liability apart from her excessive force claim; therefore, the Court deems White's Fourteenth Amendment claim as simply the vehicle whereby the Fourth Amendment prohibition against excessive force applies to Gerardot's state action. *See Herzog v. Vill. of Winnetka, Ill.*, 309 F.3d 1041, 1042 (7th Cir. 2002). As the Court will conclude *supra*, Gerardot's motion for summary judgment on the excessive force claim will be denied.

In addition, Gerardot places a one-sentence footnote in his reply brief asking that the Court dismiss all claims asserted by White individually. It is well-established that arguments raised for the first time in a reply brief are deemed waived, and thus Gerardot's motion for summary judgment on White's individual claims will be denied. *See Praigrod v. St. Mary's Med. Ctr.*, No. 3:05-cv-0166-JDT-WGH, 2007 WL 178627, at *3-4 (S.D. Ind. Jan. 19, 2007); *Echemendia v. Gene B. Glick Mgmt. Corp.*, Cause No. 1:05-CV-00053, 2006 WL 3302651, at *1 n.2 (N.D. Ind. Nov. 13, 2006) (citing *Nelson v. La Crosse County Dist. Att 'y*, 301 F.3d 820, 836 (7th. Cir. 2002)).

Nonetheless, the viability of Arlinthia White's individual claim is indeed questionable in view of *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). Accordingly, if counsel cannot come to a stipulation concerning Arlinthia White's claim, the Defendant is granted leave to file a second motion for summary judgment addressing that claim on or before February 23, 2007, with a supporting brief not to exceed three pages. Arlinthia White is to file a response brief on or before March 2, 2007, that likewise is not to exceed three pages. If a reply brief is desired, the Court will so order.

[9] A police officer's use of deadly force constitutes a seizure within the meaning of the Fourth Amendment. *DeLuna v. City of Rockford*, 447 F.3d 1008, 1010 (7th Cir. 2006).

423 F.3d 763, 768 (7th Cir. 2005) (citations omitted). To determine whether the amount of force used was excessive, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).

Moreover, the reasonableness inquiry focuses on whether the officer's actions were "objectively reasonable in light of the facts and circumstances confronting [him]." *Graham*, 490 U.S. at 395.  This means that courts must view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "If an officer believes that the suspect's actions place him, or others in the immediate vicinity, in imminent danger of death or serious bodily injury, deadly force can reasonably be used." *DeLuna*, 447 F.3d at 1010 (citing *Scott v. Edinburg*, 346 F.3d 752, 756 (7th Cir. 2003); *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002)).

Gerardot cites a host of cases in support of his argument that he did not violate Ford's constitutional rights, maintaining that Ford's behavior prior to the shooting would cause a reasonable officer to believe that Gerardot and others were in imminent danger of death or

12

serious bodily injury. Specifically, Gerardot contends that he shot Ford because he believed that Ford, who allegedly had just fired shots twice into a large crowd of people, was concealing a gun in front of him while ignoring Gerardot's commands to put his hands in the air.[10]

However, Gerardot's argument ignores an important point–at the summary judgment stage, the Court must examine the facts *in the light most favorable to the plaintiff*, drawing all reasonable inference in the plaintiff's favor. *Payne*, 337 F.3d at 770. In that regard, White's evidence indicates that, contrary to Gerardot's allegations, Ford did not disobey Gerardot's commands and did not have a gun in his hands when Gerardot shot him. Instead, upon hearing Gerardot's command to "freeze," Ford turned to face Gerardot *with his hands in the air*, at which time Gerardot shot Ford. Assuming that Ford was surrendering with his unarmed hands in the air when Gerardot shot him, it is clear that Ford did not pose a threat of serious harm to Gerardot or others, a conclusion which has been echoed by a multitude of other courts. *See Gray-Hopkins v. Prince George's County, Md.*, 309 F.3d 224, 231 (4th Cir. 2002); *Hemphill v. Schott*, 141 F.3d 412, 417 (2nd Cir. 1998); *Quarles v. City of Gary, Ind.*, No. 2:04 CV 22, 2006 WL 36981, at *4 (N.D. Ind. Jan. 5, 2006); *Fitch v. Scott*, No. 2:03-CV-465-FTM29DNF, 2005 WL 1925028, at *5-6 (M.D. Fla. Aug. 10, 2005); *Johnson v. City of Richmond, Va.*, No. Civ.A. 3:04CV340, 2005 WL 1668080, at *4-5 (E.D. Va. June 16, 2005); *Kanae*, 294 F. Supp. 2d at 1185; *Johnston v. Dek*, No. 8:00CV324, 2002 WL 803368, at *4 (D. Neb. Jan. 25, 2003); *Estate of Griffin v.*

---

[10] White makes much of purported inconsistencies among Gerardot's affidavit supporting his motion for summary judgment, his deposition, and his internal affairs interview. White, however, does little to explain how these alleged inconsistencies support her opposition to the motion for summary judgment. Indeed, her sur-response brief is essentially an attack on Gerardot's credibility, which is inappropriate at the summary judgment stage. *Payne*, 337 F.3d at 770. In any event, the Court does not need to address these inconsistencies here, as we are able to determine that White's proffered evidence is enough to create a genuine issue of material fact that Gerardot used excessive force.

13

*Hickson*, No. CIV.A. 98-3805, 2002 WL 988003, at *5 (E.D. Pa. May 9, 2002). Given this set of facts and circumstances, a jury could conclude that Gerardot's actions were not objectively reasonable and that he therefore violated Ford's Fourth and Fourteenth Amendment rights by using excessive force against him.[11]

### 2. Qualified Immunity

Gerardot maintains that even if there are questions of fact regarding whether he used excessive force, he is entitled to the protection of qualified immunity. The doctrine of qualified immunity shields government officials, including police officers, against suits brought against them under § 1983 as long as their conduct "could reasonably have been thought consistent with the rights they are alleged to have violated." *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). When determining whether qualified immunity applies, courts undertake a two-part inquiry. *Id.*

First, the court must determine whether the officer's conduct, taken in a light most favorable to the plaintiff, violated a constitutional right. *Id.* If no constitutional right was violated under prong one, then no further inquiry is necessary. *Id.* As discussed *supra*, the Court found that, accepting White's factual allegations as true, Gerardot violated Jones's Fourth and Fourteenth Amendment rights to be free from the excessive use of force. Accordingly, Gerardot loses on the first prong of the qualified immunity analysis.

---

[11] Gerardot also moves for summary judgment on White's official capacity claim. Although White initially sued Gerardot in both his individual and official capacities (Compl. ¶ 7), White apparently has abandoned her official capacity claim, as she fails to address this claim in her response to the motion for summary judgment. Accordingly, her argument on this issue is waived. *See Palmer*, 327 F.3d at 597-99. In any event, summary judgment is appropriate on White's official capacity claim, as she fails to make any showing that the deprivation of Ford's constitutional rights was affirmatively linked to a governmental entity's policy or custom. *Kentucky v. Graham,* 473 U.S. 159, 167 (1985); *Hill v. Shelander,* 924 F.2d 1370, 1372 (7th Cir. 1991).

However, the Court's investigation does not end there, as the qualified immunity analysis involves a "further dimension," (i.e., a second prong) beyond the initial excessive force inquiry. *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Under this second prong, the court determines whether the constitutional right was clearly established at the time of the officer's actions. *Leaf*, 400 F.3d at 1080. The relevant inquiry under prong two is whether "it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Id.*

The plaintiff bears the burden of showing that the defendant's conduct violated clearly established law, and she may do so by offering closely analogous cases or evidence that the defendant's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *Ogunsusi v. Straub*, 1:05-CV-359-TS, 2006 WL 3147708, at *5 (N.D. Ind. Oct. 31, 2006) (citing *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir.1993)). If relying on case law, it is not necessary for a plaintiff to find a prior case with nearly identical facts; instead, the plaintiff must produce case law showing that the state of the law at the time of the officer's conduct was such that the officer had fair warning that his conduct violated the Constitution. *Id.* (citing *Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005)).

Moreover, although the qualified immunity determination is an issue of law for the court to decide, when factual disputes surrounding the conduct at issue "bear directly upon whether it was objectively reasonable for [the officer] to believe he acted in compliance with clearly established law," then summary judgment on the issue of qualified immunity must be denied. *Montgomery v. Vill. of Lake Station*, No. 2:02-CV-209, 2006 WL 2457238, at *8 (N.D. Ind. Aug. 22, 2006); *see also Campbell v. City of Indianapolis*, No. 1:03-CV-0180-SEB-VSS, 2005 WL 2396925, at *6 (S.D. Ind. Sept. 28, 2005) (citing *Green v. Carlson*, 826 F.2d 647, 652 (7th Cir.

15

1987)) ("Summary judgment is not available where factual disputes infuse issues on which entitlement to immunity turns.").

Here, the factual disputes between the parties preclude a finding that Gerardot is entitled to qualified immunity as a matter of law. It is clearly established law that the use of deadly force is permissible only when the officer had probable cause to believe that the suspect posed an immediate threat to the safety of the officer or others. *See, e.g.*, *Jacobs v. City of Chicago*, 215 F.3d 758, 774 (7th Cir. 2000); *Ellis v. Wynalda*, 999 F.2d 243, 246 (7th Cir. 1993); *Estate of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993); *Buchanan v. City of Milwaukee*, 290 F. Supp. 2d 954, 963 (E.D. Wis. 2003); *Estate of Chlopek v. Jarmusz*, 877 F. Supp. 1189, 1197 (N.D. Ill. 1995); *see also* Ind. Code § 35-41-3-3.[12] In that regard, accepting White's facts as true, it is obvious that no reasonable officer would believe that it is lawful to shoot an unarmed suspect who is surrendering to police with his hands in the air, as such a suspect does not pose an immediate threat to the safety of the officer or others. *Johnson*, 2005 WL 1668080, at *9 ("There can be no doubt that shooting a suspect with his arms raised, or that shooting a suspect who does not appear to pose a threat, constitutes the violation of a clearly established right."); *see also Gray-Hopkins*, 309 F.3d at 231; *Fitch*, 2005 WL 1925028, at *7; *Carter v. City of Chicago*, No. 02 C 2684, 2004 WL 1093718, at *4 (N.D. Ill. May 3, 2004); *Kanae*, 294 F. Supp. 2d at 1185-

---

[12] Although not particularly relevant, and certainly not controlling, Ind. Code § 35-41-3-3 provides that:
[A]n officer is justified in using deadly force only if the officer:
   (1) has probable cause to believe that that deadly force is necessary:
      (A) to prevent the commission of a forcible felony; or
      (B) to effect an arrest of a person who the officer has probable cause to believe
      poses a threat of serious bodily injury to the officer or a third person; and
   (2) has given a warning, if feasible, to the person against whom the deadly force is to be
   used.

16

86; *Estate of Griffin*, 2002 WL 988003, at *6; *Johnston*, 2002 WL 803368, at *4. Accordingly, White is not entitled to qualified immunity.

### 3. Punitive Damages

Finally, Gerardot asserts that summary judgment should be granted on White's request for punitive damages, which are available in § 1983 claims when the defendant's conduct was "motivated by evil intent or involv[ed] reckless or callous indifference to the federally-protected rights of others." *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (quoting *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989)). Regarding the issue of punitive damages, the Seventh Circuit has noted that "[w]hile evaluations of motive and intent are generally inappropriate on a motion for summary judgment," there is "an exception to this rule where a plaintiff fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of the defendant's actions." *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999) (citing *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986); *Sahagian v. Dickey*, 827 F.2d 90, 100 n.8 (7th Cir. 1987)); *see also Siebert*, 256 F.3d at 655 ("In the end, it will be for the jury to decide the proper quantum of relief, if any, for [the defendant's] violation of the [plaintiff's] Fourth Amendment rights.").

Here, it is inappropriate to grant summary judgment on the claim of punitive damages. As discussed *supra*, White's evidence reveals that Gerardot shot and killed Ford while Ford was surrendering with his hands in the air. Accepting these facts as true, a reasonable juror could conclude that Gerardot demonstrated a reckless or callous disregard for Ford's right to be free from the excessive use of force. *See Montgomery*, 2006 WL 2457238, at *4, 13 (finding that summary judgment on the issue of punitive damages was inappropriate when witness's

17

testimony revealed that police officers shot and killed the unarmed victim while his hands were in his pockets).

## IV. CONCLUSION

For the foregoing reasons, Gerardot's motion to strike (Docket # 37) is GRANTED IN PART and DENIED IN PART. The Court DENIES Gerardot's motion to strike paragraphs 9, 12, 14, and 17 of Jones's affidavit; paragraphs 10 and 13 of Tinsley's affidavit, and paragraph 6 of Thomas's affidavit. However, the Court GRANTS Gerardot's motion to strike paragraph 18 of Jones's affidavit and paragraph 12 of Tinsley's affidavit. Finally, the Court DENIES AS MOOT Gerardot's motion to strike the internal affairs interview, the postmortem examination, and Dr. Spitz's affidavit.

Likewise, Gerardot's motion for summary judgment (Docket # 18) is GRANTED IN PART and DENIED IN PART for the reasons provided in this opinion. Gerardot's motion for summary judgment is GRANTED as to White's Indiana state law claims and her official capacity claim. However, the motion is DENIED as to White's § 1983 claim asserted against Gerardot in his individual capacity.

SO ORDERED.

Enter for February 15, 2007.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge