UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ARLINTHIA WHITE, Individually and as Personal Representative of the Estate of Derrick Ford, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 1:05-CV-382 |
| v. | ) ) | |
| MARK GERARDOT, in his Individual Capacity, | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

### I. Introduction and Procedural Background

Fort Wayne Police Detective Mark Gerardot shot and killed Derrick Ford on January 10, 2004, after a fight broke out outside Veterans of Foreign Wars Post 8147 ("VFW") in Fort Wayne, Indiana. (Docket # 1.) Ford's mother, Arlinthia White, in her individual capacity and in her capacity as the personal representative of Ford's estate, sued Gerardot under 42 U.S.C. § 1983, claiming that Gerardot used excessive force in violation of Ford's Fourth and Fourteenth Amendment rights, and advanced various state law negligence claims against him.[1] (Docket # 1.)

On October 20, 2006, Gerardot filed his first motion for summary judgment, arguing that he did not use excessive force when he shot Ford and that he is entitled to qualified immunity. (Docket # 18.) In an Opinion and Order dated February 15, 2007, this Court granted Gerardot's motion with respect to White's state law claims and official capacity claim, but denied it as to

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. §§ 1331 and 1343. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

White's § 1983 claim against Gerardot in his individual capacity.[2] (Docket # 69.)

On February 20, 2007, White filed a second motion for summary judgment (Docket # 80) seeking to dismiss all claims asserted by White individually, asserting that "White, in her individual capacity . . . ha[s] no constitutional right to recover for the loss of Ford's society, companionship, support, services, care, assistance, love, comfort, and other economic and non-economic damages." (Def.'s Mem. in Supp. of Second Mot. for Summ. J. 3.)  White filed a response in opposition to the motion for summary judgment on March 2, 2007 (Docket # 89, 90), and emphasized that she has not alleged a violation of her constitutional rights, arguing instead that she has a viable claim for damages under Ind. Code § 34-23-1-2 because 42 U.S.C. § 1988 dictates that state survivorship statutes are to be used in the context of § 1983 claims. (Pl.'s Mem. in Opp'n to Def.'s Second Mot. for Summ. J. 1, 3.)  White and Gerardot each filed a cross-supplemental response brief on February 5, 2008 (Docket # 105, 106), and a cross-supplemental reply brief on February 15, 2008 (Docket # 107, 108).[3]  Therefore, Gerardot's second motion for summary judgment is now fully briefed.

Looking solely to the relief that Gerardot seeks in his second motion for summary judgment – that White's individual claims be dismissed, Gerardot's motion for summary judgment will be GRANTED for the reasons set forth herein.  Through the briefing process, however, it has become apparent that the parties are at odds on an issue that was not subject to

---

[2] Gerardot appealed the Court's February 15, 2007, Opinion and Order to the Seventh Circuit Court of Appeals, but that appeal was dismissed for lack of jurisdiction. *See White v. Gerardot*, 509 F.3d 829 (7th Cir. 2007).

[3] Briefing was automatically stayed on Gerardot's second motion for summary judgment while the appeal of this Court's Opinion and Order on Gerardot's first motion for summary judgment was pending. *See, e.g.*, *May v. Sheahan*, 226 F.3d 876, 879-80 (7th Cir. 2000) (stating that notice of an interlocutory qualified immunity appeal presumptively deprives the district court of jurisdiction to proceed with a trial on the merits of the claims on appeal (citing *Apostol v. Gallian*, 870 F.2d 1335, 1337-38 (7th Cir. 1989))).

Gerardot's second motion for summary judgment and thus was not definitively addressed by the parties in their briefs.  That is, the parties seemingly dispute the elements of damages that White can pursue as Ford's personal representative, which is an issue that the Court can rule on as a matter of law; as a result, the parties will be directed to file cross motions on this issue.

## II.  Relevant Factual Background[4]

Ford was an adult on January 10, 2004, the date of his death, as he was born on February 24, 1983. (White Dep. 6.)  Apparently, Ford was not married and had no dependents. (*See* Pl.'s Mem. in Opp'n to Def.'s Second Mot. for Summ. J. 2.)

As to White's relationship with Ford, Ford was taken away from White at the age of ten due to child neglect and never lived with her again. (White Dep. 16.)  Nevertheless, White saw Ford often between 1993 and 2003 and spent holidays with him. (White Dep. 17-19, 22-23.)  Apparently, Ford even had White's initials tattooed on his neck. (White Dep. 57.)  White had frequent contact with Ford the last year of his life, talking with him on the day of the incident about delivering his Christmas present. (White Dep. 68.)  White was not financially dependent on Ford and did not receive any money from him. (White Dep. 29.)

On the night of the incident, White called 911 requesting that the police go down to the VFW because a fight was going to occur. (White Dep. 41-45.)  She feared for Ford's safety and was trying to locate him when she heard that he had been shot. (White Dep. 41-45.)  White testified that she does not know any reason why Gerardot would shoot Ford other than that Gerardot was in fear for his life. (White Dep. 92.)

---

[4] For summary judgment purposes, the facts are recited in the light most favorable to White, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

### III.  Legal Standard

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

### IV.  Discussion

Gerardot contends that as a matter of law White, in her individual capacity, has no constitutional right to recover for the loss of Ford's society, companionship, support, services, care, assistance, love, comfort, and other economic and non-economic damages.   Gerardot's argument has merit.

Indeed, the Seventh Circuit Court of Appeals held in *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005), that a parent has no constitutional right under 42 U.S.C. § 1983 to recover for the loss

4

of society and companionship of an adult child as a result of state action.[5] The only exception to this general rule articulated in *Russ* is if the state action is alleged to have been specifically aimed at interfering with the parent-child relationship. *Id*. at 788.

Here, there are no allegations that Gerardot's action was specifically aimed at interfering with the parent-child relationship between White and Ford. In fact, White testified just the opposite – that she knew of no reason that Gerardot would shoot Ford other than that Gerardot was in fear for his life. Thus, under *Russ*, White simply has no constitutional claim individually for her loss of Ford's society and companionship.

In fact, White seemingly agrees, as in her response brief she expressly states that "she has not alleged violations of her constitutional rights." (Pl.'s Mem. in Opp'n to Def.'s Second Mot. for Summ. J. 1.)  Instead, she advances an alternative premise to attempt to salvage her individual claims. Specifically, White argues that because § 1983 does not address the issue of survivorship of civil rights actions upon the death of a plaintiff, under 42 U.S.C. § 1988 state survivorship statutes provide the principal reference point in determining survival of civil rights actions. (*Id*.)  Thus, as White sees it, she can advance her § 1983 claim under Indiana's wrongful death statute, Ind. Code § 34-23-1-2, contending that it "specifically authorizes such a cause of action on behalf of parents and an estate." (*Id*.)

White's premise, however, fails as a matter of law at the outset. To explain, while Ind. Code § 34-23-1-2 does afford the recovery of damages for the loss of an adult's love and companionship if the death of that adult is caused by the wrongful act or omission of another

---

[5] In *Russ*, the Seventh Circuit Court of Appeals expressly overruled their decision in *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), which held that a parent's constitutional liberty interest in his relationship with his adult son was violated when his son was killed by police, stating that *Bell* was "wrongly decided." *Russ*, 414 F.3d at 783-84.

person, the statute specifically states that "*only the personal representative*" of the adult may maintain the action. Ind. Code § 34-23-1-2(b) (emphasis added); *see also Estate of Sears v. Griffin*, 752 N.E.2d 210, 215-16 (Ind Ct. App. 2001) (stating that a parent cannot in his or her individual capacity bring a wrongful death action under the Indiana Wrongful Death Statute), *overruled in part on other grounds by* 771 N.E.2d 1136 (Ind. 2002); *City of Terra Haute v. Simpson*, 746 N.E.2d 359, 363-64 (Ind. Ct. App. 2001) (stating that Indiana courts have repeatedly held that a plaintiff who is not the decedent's personal representative has no legal basis to bring a wrongful death claim under Ind. Code § 34-23-1-1); *Hosler ex rel. Hosler v. Caterpillar, Inc.*, 710 N.E.2d 193, 196 (Ind. Ct. App. 1999).  Any damages recovered by the personal representative for the loss of the adult's love and companionship then "inure to the exclusive benefit of a nondependent parent or nondependent child of the adult person," if such parent or child proves that he or she had a "genuine, substantial, and ongoing relationship with the adult." Ind. Code § 34-23-1-2(d), (f).

Thus, clearly White cannot *individually* advance a § 1983 claim for damages under Ind. Code § 34-23-1-2.  Therefore, with respect to solely the relief that Gerardot seeks in the instant summary judgment motion – that White's individual claims be dismissed, his motion for summary judgment will be GRANTED.

The precise interface between § 1983 and the Indiana Wrongful Death Statute, however, remains somewhat uncertain, *see, e.g.*, *Montgomery v. Vill. of Lake Station*, No. 2:02-CV-209, 2006 WL 2457238, at *12 (N.D. Ind. Aug. 22, 2006); *Tracy v. Bittles*, 820 F. Supp. 396, 399-401 (N.D. Ind. 1993), a point lightly touched upon in the briefing and something apart from the thrust of Gerardot's second motion for summary judgment.  Nevertheless, the question lingers in

this case because it is seemingly central to the elements of damage that White in her capacity as Ford's personal representative will seek before a jury. To bring this issue to an early resolution, the parties are to file cross motions addressing the personal representative's legal entitlement to such things as Ford's pain and suffering, Ford's earning capacity, Ford's hedonic damages, administrative costs of Ford's estate, loss of Ford's services, and loss of Ford's love and companionship.[6]

### V.  Conclusion

For the foregoing reasons, Gerardot's second motion for summary judgment (Docket # 80) is GRANTED, and thus White's individual claims are dismissed as a matter of law. In addition, the parties are GRANTED until March 20, 2008, to file cross motions with respect to the elements of damages that White can pursue as Ford's personal representative.

SO ORDERED.

Enter for February 25, 2008.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[6] In the recent case of *McKinney v. Duplain* in the United States District Court for the Southern District of Indiana, Case No. 1:04-cv-0294, Judge Young instructed the jury that these were proper elements of damages to consider in a § 1983 wrongful death case.