# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **ARLINTHIA WHITE, Individually and** | ) | |
| **as Personal Representative of the Estate** | ) | |
| **of Derrick Ford, Deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO. 1:05-CV-382** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARK GERARDOT, in his** | ) | |
| **Individual Capacity,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Fort Wayne Police Detective Mark Gerardot shot and killed Derrick Ford on January 10, 2004, after a fight broke out at Veterans of Foreign Wars Post 8147 ("VFW") in Fort Wayne, Indiana. (Docket # 1.)  Ford's mother, Arlinthia White, in her individual capacity and in her capacity as the personal representative of Ford's estate, sued Gerardot under 42 U.S.C. § 1983, claiming that Gerardot used excessive force in violation of Ford's Fourth and Fourteenth Amendment rights, and also advanced various state law negligence claims against him.[1] (Docket # 1.)

In its Opinion and Order dated February 25, 2008 (Docket # 109), granting Gerardot's second motion for summary judgment and dismissing White's individual claims, this Court noted that the parties are at odds on an issue that was not subject to Gerardot's second motion for summary judgment and thus was not definitively addressed by the parties in their summary

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. §§ 1331 and 1343.  Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

judgment briefs. (Op. & Order, Feb. 25, 2008, at 2-3, 6-7.)  That is, the parties dispute the elements of damages that White can pursue as the personal representative of Ford's estate, which is an issue the Court can rule on as a matter of law. (*Id*.)  In order to reach this issue sooner rather than later, the Court directed the parties to file cross motions on this issue (*id*.), which they did on March 20, 2008 (Docket # 110, 111); the matter is now fully briefed (Docket # 113, 114).

For the following reasons, White, in her capacity as the personal representative of Ford's estate, is legally entitled to seek all six types of damages that she requests, which are (1) Ford's reasonable medical, hospital, funeral, and burial expenses; (2) loss of Ford's love and companionship; (3) necessary and reasonable costs and expenses of administering Ford's estate and prosecuting a wrongful death action, including reasonable attorney fees; (4) Ford's conscious pain and suffering; (5) loss of Ford's life (hedonic damages); and (6) punitive damages.

## I.  Relevant Factual and Procedural Background[2]

On the date of his death, Ford was an adult (born in 1983), was single, and had no dependents. (White Dep. 6; Pl.'s Mem. in Opp'n to Def.'s Second Mot. for Summ. J. 2.)

Ford was taken away from White at the age of ten due to child neglect and never lived with her again. (White Dep. 16.)  Nevertheless, White saw Ford often between 1993 and 2003 and spent holidays with him, and apparently even had White's initials tattooed on his neck. (White Dep. 17-19, 22-23, 57.)  Though White was not financially dependent on Ford and did not receive money from him, she had frequent contact with him the last year of his life, talking

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to White, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

with him on January 10, 2004, the day of the incident, about delivering his Christmas present. (White Dep. 29, 68.)  In fact, that night, White called 911 requesting that the police go down to the VFW because a fight was going to occur; she feared for Ford's safety and was trying to locate him when she heard that he had been shot. (White Dep. 41-45.)

On November 1, 2005, White, in her individual capacity and in her capacity as the personal representative of Ford's estate, sued Gerardot under 42 U.S.C. § 1983, claiming that Gerardot used excessive force in violation of Ford's Fourth and Fourteenth Amendment rights and advanced various state law negligence claims against him. (Docket # 1.)  On October 20, 2006, Gerardot filed his first motion for summary judgment, arguing that he did not use excessive force when he shot Ford and that he is entitled to qualified immunity. (Docket # 18.) In an Opinion and Order dated February 15, 2007, this Court granted Gerardot's motion with respect to White's state law claims and official capacity claim, but denied it as to White's § 1983 claim against Gerardot in his individual capacity.[3] (Docket # 69.)

On February 20, 2007, Gerardot filed a second motion for summary judgment (Docket # 80) seeking to dismiss all claims asserted by White individually, asserting that "White, in her individual capacity . . . ha[s] no constitutional right to recover for the loss of Ford's society, companionship, support, services, care, assistance, love, comfort, and other economic and non-economic damages." (Def.'s Mem. in Supp. of Second Mot. for Summ. J. 3.)  In response (Docket # 89, 90), White argued that she has not alleged a violation of her constitutional rights, arguing instead that she has a viable claim for damages under Indiana Code § 34-23-1-2 because

---

[3] Gerardot appealed the Court's February 15, 2007, Opinion and Order to the Seventh Circuit Court of Appeals, but that appeal was dismissed for lack of jurisdiction. *See White v. Gerardot*, 509 F.3d 829 (7th Cir. 2007).

42 U.S.C. § 1988 dictates that state survivorship statutes are to be used in the context of § 1983 claims. (Pl.'s Mem. in Opp'n to Def.'s Second Mot. for Summ. J. 1, 3.)

On February 25, 2008, the Court granted Gerardot's second motion for summary judgment and dismissed White's individual claims as a matter of law, leaving only White's claims in her capacity as the personal representative of Ford's estate in the case. (Docket # 109.) In its Opinion and Order granting summary judgment, the Court noted the parties' dispute concerning the elements of damages that White can pursue as Ford's personal representative and directed them to file cross motions on the issue.

## II.  Legal Standard

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

4

### III.  Discussion

*A.  Summary of the Law Concerning Section 1983 Damages*

Section 1988 establishes a three-step process for the selection of appropriate substantive law in a § 1983 action. *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985).  The first step is to determine whether the federal civil rights law is deficient in furnishing a particular rule. *Id.*  If the federal law is deficient, "the most closely analogous state law may fill the vacuum only if it is consistent with the meaning and purpose of constitutional and federal statutory law." *Id.*; *see also Burnett v. Grattan*, 468 U.S. 42, 47-48 (1984).  However, if the state law is inconsistent, "it must be disregarded in favor of the federal common law." *Bass*, 760 F.2d at 1188.

Section 1983 is silent on the issue of the appropriate measure of damages. *Id.*  Therefore, the Court must look to the most closely analogous state law, in this case, the Indiana Wrongful Death Statute, to determine the appropriate measure of damages. *Id.*  The Court may not, however, "mold the constitutional claim to fit within the parameters of state law." *Id.*  Indeed, "[t]he proper approach . . . is not to transform the section 1983 action on behalf of [the decedent] into a wrongful death action on behalf of those who survived him, but to determine whether state law is inconsistent with the compensatory and deterrent policies underlying section 1983." *Id.* at 1189-90.

In general, "Section 1983 damages are considered to be appropriate as long as those damages generally effectuate the policies underlying § 1983." *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1104 (7th Cir. 1990) (citing *Carey v. Piphus*, 435 U.S. 247, 258-59 (1978); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1238-39 (7th Cir. 1984), *overruled on other*

grounds by *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005)).  "The fundamental policies underlying § 1983 are compensation for, and deterrence of, unconstitutional acts committed under state law." *Graham*, 915 F.2d at 1104 (citing *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978)); *see also Crawford v. Garnier*, 719 F.2d 1317, 1324 (7th Cir. 1983) (quoting *Carey*, 435 U.S. at 254-55); *Frye v. Town of Akron*, 759 F. Supp. 1320, 1326 (N.D. Ind. 1991).

### B.  *White's Claim for § 1983 Damages in Her Capacity as the Personal Representative of Ford's Estate*

Here, White contends that she is legally entitled in her capacity as the personal representative of Ford's estate to seek before a jury essentially six different types of damages in this § 1983 action.  White's assertion is ultimately persuasive.

#### 1.  Ford's Reasonable Medical, Hospital, Funeral, and Burial Expenses

To begin, the parties do not dispute that § 1983 is deficient with respect to the issue of damages and that the Court must first look to the Indiana Wrongful Death Statute, specifically Indiana Code § 34-23-1-2, to determine the damages available to White. (Pl.'s Cross Mem. of Law Re Damages Recoverable 3-4; Def.'s Br. Regarding Section 1983 Damages 4.)  In that vein, White first asserts that she is entitled to seek reasonable medical, hospital, funeral and burial expenses on behalf of the estate because these damages are expressly included in the Indiana Wrongful Death Statute.

Indeed, Indiana Code § 34-23-1-2, which provides that a personal representative of an unmarried adult decedent without dependents may maintain an action for the decedent's wrongful death, states that damages may include "[r]easonable medical, hospital, funeral, and burial expenses necessitated by the wrongful act or omission that caused the adult person's death." Ind. Code § 34-23-1-2(c)(3)(A).  In fact, Indiana Pattern Jury Instruction Civil 11.09

expressly instructs a jury to consider compensatory damages for these particular expenses. *See generally Flis v. Kia Motors Corp.*, No. 1:03cv1567-JDT-TAB, 2005 WL 1528227, at *2 (S.D. Ind. June 20, 2005) ("While not mandatory, pattern instructions often provide great assistance to the parties and the court."); *Herriman v. Conrail, Inc.*, 887 F. Supp. 1148, 1154-56 (N.D. Ind. 1995) (emphasizing that the Indiana Civil Pattern Jury Instructions bear the approval of the Indiana Supreme Court).

In response, Gerardot does not dispute that a personal representative of the decedent's estate is entitled to seek medical, hospital, funeral, and burial expenses in a § 1983 action or suggest that such damages are somehow inconsistent with the purposes of § 1983. He instead argues that "neither the estate nor . . . White have incurred these damages," emphasizing that Ford was not hospitalized after the incident and that White testified in her deposition that Abundant Life Church and the township paid for Ford's funeral expenses. (Def.'s Resp. to Pl.'s Cross Mem. of Law Re Damages Recoverable ("Def.'s Resp. Br.") 1-2.)

Yet, Gerardot's argument is premature at this juncture. The scope of this Order is limited to determining White's legal entitlement as the personal representative of Ford's estate to various types of damages. Whether the estate *actually incurred* medical, hospital, funeral, or burial expenses is an issue for the trier of fact to ultimately determine. *See, e.g., Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818, 834 (N.D. Ill. 2006) (articulating that it was premature to conclude prior to trial that plaintiff's evidence of lost profits was insufficient as a matter of law, as "[i]t is up to the trier of fact to assess accuracy of the calculations of [the plaintiff's] experts, and to determine how much damages, if any, should be awarded"); *Sherrod v. Berry*, No. 80 C 4117, 1985 WL 3927, at *1 (N.D. Ill. Nov. 15, 1985) (emphasizing in a § 1983 action that "[t]he

7

determination of the amount of pecuniary loss in a particular case is always the function of the jury" (citing *Thomas v. S.H. Pawley Lumber Co.*, 303 F.2d 604, 609 (7th Cir. 1962))).

Therefore, because the Indiana Wrongful Death Statute expressly provides for the recovery of reasonable medical, hospital, funeral, and burial expenses and because there is no suggestion by Gerardot that the recovery of these expenses is in any way inconsistent with the compensatory and deterrent policies underlying § 1983, *see Bass*, 769 F.2d at 1190, White is legally entitled to seek the award of Ford's reasonable medical, hospital, funeral, and burial expenses on behalf of the estate.

      2.  <u>Loss of Ford's Love and Companionship</u>

White further contends that she is entitled in her capacity as personal representative of the estate to seek damages for the loss of Ford's love and companionship.  She again looks to the Indiana Wrongful Death Statute as the basis for her request.

Indiana Code § 34-23-1-2 explicitly states that damages in a wrongful death action may include an amount not to exceed $300,000 for the loss of an adult decedent's love and companionship, provided that the decedent's nondependent parent or child who wishes to recover damages can show that he or she "had a genuine, substantial, and ongoing relationship" with the decedent. Ind. Code § 34-23-1-2(c)(3)(B), (e).  The statute provides that these damages then inure "to the exclusive benefit of a nondependent parent or nondependent child" of the decedent. Ind. Code § 34-23-1-2(d).

Indeed, Gerardot does not dispute that a personal representative is entitled to seek damages on behalf of a nondependent parent for the loss of a decedent's love and companionship in a § 1983 action, nor does he suggest that such damages are somehow inconsistent with the

8

purposes of § 1983. He instead argues at length that "there is certainly a question as to [whether] Arlinthia White had a genuine, substantial, and ongoing relationship with Derrick Ford." (Def.'s Resp. Br. 4.)

Yet, as emphasized *supra*, the scope of this Order is simply to determine as a matter of law the types of damages that White can seek as the personal representative of Ford's estate. Consequently, Gerardot's argument is again premature, and whether White truly had a "genuine, substantial, and ongoing relationship" with Ford is an issue for the trier of fact to determine.[4]

In short, because the Indiana Wrongful Death Statute expressly provides for the recovery of damages for a decedent's loss of love and companionship, and because Gerardot does not assert that the recovery of these expenses is in any way inconsistent with the purposes of § 1983, *see Bass*, 769 F.2d at 1190, White is legally entitled as the estate's personal representative to seek damages for the loss of Ford's love and companionship.

3.  Necessary and Reasonable Costs and Expenses of Administering Ford's Estate and Prosecuting a Wrongful Death Action, Including Reasonable Attorney Fees

White next argues that she is entitled to seek on the estate's behalf the necessary and reasonable costs and expenses of administering Ford's estate and prosecuting a wrongful death action, including reasonable attorney fees. She points to the Indiana Pattern Jury Instructions as the authority for her request.

---

[4] Due to the limited scope of this Order, the Court need not at this juncture determine whether this restriction in the Indiana Wrongful Death Statute – that is, that White show she had a "genuine, substantial, and ongoing relationship" with Ford – is consistent with the purposes of § 1983 and thus enforceable. Stated another way, the question remains open whether White even has to satisfy this particular Indiana requirement in order to recover damages for loss of Ford's love and companionship. In that same vein, it is not necessary for the Court at this stage of the proceedings to determine whether the $300,000 cap on the recovery of damages for the loss of love and companionship as set forth in the Indiana Wrongful Death Statute is applicable here.

Indeed, Indiana Pattern Jury Instruction Civil 11.09 specifically contemplates that, in addition to recovering reasonable heath care, funeral, and burial expenses, a personal representative in a wrongful death action may recover for the benefit of the decedent's estate "[t]he value of necessary and reasonable costs and expenses of administering the estate of the decedent and of prosecuting a wrongful death action, including reasonable attorney fees." *See generally Flis*, 2005 WL 1528227, at *2; *Herriman*, 887 F. Supp. at 1154-56.

Again, Gerardot does not dispute that a personal representative is entitled to seek these damages on behalf of the estate or suggest that such damages are inconsistent with the policies of § 1983. He instead points to White's answers to his interrogatories in which she stated that Ford died intestate, and asserts that White "is not entitled to ask the jury for any costs and expenses in administering the estate of the decedent as no such costs and expenses have been incurred." (Def.'s Resp. Br. 3.) Gerardot's argument is once again premature, as whether Ford's estate actually incurred any costs or expenses is an issue for the trier of fact to determine. *See, e.g., Foodcomm Int'l*, 463 F. Supp.2d at 834; *Sherrod*, 1985 WL 3927, at *1 (citing *Thomas*, 303 F.2d at 609).

In sum, because the Indiana Pattern Jury Instructions expressly provide for the recovery of the estate's administration and prosecution expenses, and because Gerardot does not suggest that the recovery of these expenses is in any way inconsistent with the policies underlying § 1983, *see Bass*, 769 F.2d at 1190, White is legally entitled to seek these expenses, including the estate's reasonable attorney fees.

4. Ford's Conscious Pain and Suffering

White also requests damages on behalf of the estate to compensate for Ford's conscious

10

pain and suffering.  On that score, she contends that the damages available under the Indiana Wrongful Death Statute are inadequate to fulfill the mandate of § 1983 and, therefore, they must be supplemented with damages under federal common law for conscious pain and suffering.

In response, Gerardot does not dispute that White is entitled to recover damages for Ford's conscious pain and suffering, and wisely so.  The Seventh Circuit Court of Appeals has stated that a decedent's conscious pain and suffering is indeed a compensable injury in a § 1983 action. *See, e.g.*, *Bass*, 769 F.2d at 1189-90; *Crawford*, 719 F.2d at 1324-25.

Therefore, White is entitled to seek damages on behalf of the estate for Ford's conscious pain and suffering.

5. Ford's Loss of Life (Hedonic Damages)

Again seeking to supplement the damages available under the Indiana Wrongful Death Statute, White requests hedonic damages on the estate's behalf, that is, damages for the loss of Ford's pleasure of life. *See Frye*, 759 F. Supp. at 1326.  Gerardot, citing solely an Indiana case and a Sixth Circuit case, opposes White's request, arguing that White is not entitled to hedonic damages because they are not allowed under the Indiana Wrongful Death Statute.

Gerardot's argument, however, stops short of considering the final step of the three-step analysis prescribed in § 1988 – that is, whether Indiana's preclusion of hedonic damages is inconsistent with the compensatory and deterrent policies underlying § 1983.  On that front, the Seventh Circuit Court of Appeals has explicitly found state wrongful death statutes that preclude recovery for the loss of life to be inconsistent with the deterrent policies of § 1983. *See Bass*, 769 F.2d at 1190; *Bell*, 746 F.2d at 1239.  In fact, "it is well settled in [the Seventh] Circuit that § 1983 permits recovery on behalf of the victim's estate for the loss of life." *Sherrod v. Berry*, 827

11

F.2d 195, 205 (7th Cir. 1987), *rev'd on other grounds,* 856 F.2d 802 (7th Cir. 1988); *see also Graham*, 915 F.2d at 1105; *Bass*, 769 F.2d at 1190; *Bell*, 746 F.2d at 1239; *Frye*, 759 F. Supp. at 1326.

Accordingly, White is legally entitled to seek hedonic damages on the estate's behalf in this action.

6.  Punitive Damages

Finally, though the Indiana Wrongful Death Statute precludes their recovery, *see* Ind. Code § 34-23-1-2(c)(2)(B), White seeks punitive damages in this action.  Gerardot wisely does not oppose her request.

The Seventh Circuit Court of Appeals has stated: "To disallow punitive damages in Section 1983 actions solely on the basis of restrictive state tort law would seriously hamper the deterrence effect of Section 1983." *Bass*, 769 F.2d at 1190 (quoting *Bell*, 746 F.2d at 1231). "Such restrictive state laws must give way to federal common law rules that permit recovery [of punitive damages]." *Id.*; *see also Smith v. Wade*, 461 U.S. 30, 35 (1983*); Carey*, 435 U.S. at 1049 n.11.  Indeed, the United States Supreme Court has specifically stated that a trier of fact may award punitive damages in a § 1983 action when the defendant's conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith*, 461 U.S. at 56.

Consequently, White is entitled to seek punitive damages on behalf of Ford's estate.

**IV.  Conclusion**

For the foregoing reasons, White, in her capacity as the personal representative of Ford's estate, is entitled to seek as a matter of law the following types of damages in this § 1983 action:

12

(1) Ford's reasonable medical, hospital, funeral, and burial expenses; (2) loss of Ford's love and companionship; (3) necessary and reasonable costs and expenses of administering Ford's estate and prosecuting a wrongful death action, including reasonable attorney fees; (4) Ford's conscious pain and suffering; (5) loss of Ford's life (hedonic damages); and (6) punitive damages.

SO ORDERED.

Enter for the 4th day of June, 2008.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

13