UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ARLINTHIA WHITE, Individually and as Personal Representative of the Estate of Derrick Ford, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 1:05-CV-382 |
| v. | ) ) | |
| MARK GERARDOT, in his Individual Capacity, | ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

### I. INTRODUCTION

This 42 U.S.C. § 1983 suit arises from the death of Plaintiff Arlinthia White's son, Derrick Ford, who Fort Wayne Police Detective Mark Gerardot shot and killed on January 10, 2004. This matter is before the court on Gerardot's motion and supplemental motion to strike White's expert, Nitin Paranjpe, Ph.D., (Docket ## 125, 130), who White disclosed over a year after the deadline passed for disclosure of expert witnesses and delivery of their reports. For the reasons that follow, Gerardot's motion will be GRANTED.

### II. FACTUAL AND PROCEDURAL HISTORY

White filed her complaint on November 1, 2005 (Docket #1), claiming that Gerardot used excessive force in violation of Ford's Fourth and Fourteenth Amendment rights when he shot and killed Ford after a fight broke out at Veterans of Foreign Wars Post 8147 in Fort Wayne,

Indiana.[1]  (*See* Compl.)  White's Complaint seeks various economic and non-economic damages, including reasonable medical, funeral and burial expenses; emotional distress; loss of personal freedom and liberty; pain and suffering; fright and shock; economic damages including lost wages and loss of earning capacity; punitive damages; loss of love, society, and companionship for members of the estate; loss of services, gifts and/or gratuities; and reasonable attorney fees and costs.  (Compl. ¶ 30.)

On February 5, 2007, the court held a motion hearing and set the discovery deadline for March 22, 2007.  (Docket # 66.)  The court also established February 16, 2007, as the deadline for delivery of expert witness reports and March 1, 2007, as the deadline for expert rebuttal reports.  (Docket # 66.)

On February 7, 2007, White filed her First Amended Rule 26(a)(3) Pre-Trial Disclosures, identifying three expert witnesses.  (Docket # 67.)  None of the experts listed were economists or financial witnesses, but White included "financial calculations/information related to Decedent" among the list of "documents, data compilations and tangible things [that] may be used in support of [her] claims[.]"  (Docket # 67.)  On February 16, 2007, White submitted three disclosures of expert testimony, none of which included Dr. Paranjpe.  (*See* Docket ## 70, 74, 76.)

On January 22, 2008, the court held a status conference at which it extended the discovery deadline to June 23, 2008, and set a July 7, 2008, deadline for *Daubert* motions (motions to challenge the admissibility of expert testimony under the standards articulated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).  (Docket # 104.)  The date of the

---

[1] White also advanced various state law negligence claims against Gerardot (Docket # 1), but the court has since dismissed them.  (Docket # 69).

jury trial was set for November 12, 2008. (Docket # 104.) The deadline for *Daubert* motions was later extended to July 14, 2008. (Docket # 119.)

The parties disputed the elements of damages available to White as personal representative of Ford's estate and, upon the court's order, ultimately filed cross-motions as to recoverable damages. (*See* Feb. 25, 2008, Op. and Or. 6-7; Docket ## 111, 113, 114.) White claimed entitlement to various types of damages, including loss of Ford's life (hedonic damages). (*See* Docket # 111.) On June 4, 2008, the court entered an Opinion and Order finding that White was entitled to pursue six types of damages, including hedonic, noting that hedonic damages are damages "for the loss of Ford's pleasure of life." (June 4, 2008, Or. 11.)

On June 13, 2008, over a year after the deadline for disclosure of expert witness reports, White's counsel submitted to Gerardot's counsel Dr. Paranjpe's report. (Def.'s Mem. of Law in Supp. of Mot. to Strike Nitin Paranjpe, Ph.D. ("Def. Mem.") 3.) White's counsel stated in a letter, "In light of the Court's ruling on hedonic damages in the above matter, I will be utilizing Dr. Nitin Paranjpe who will testify as to the substance of the enclosed reports. Also enclosed are the curriculum vitae, fee schedule and case list of Dr. Paranjpe." (Def. Mem. 3.) The expert report was a brief letter to White's counsel containing "preliminary calculations" and charts of loss of earnings and loss of household services. (Def. Mem 3-4, Ex. A.)

On July 14, 2008, Gerardot filed a Motion to Strike Dr. Paranjpe, invoking Federal Rule of Civil Procedure 37(c)(1), which provides that exclusion of an expert is an appropriate sanction for failing to comply with the requirements of Federal Rule of Civil Procedure 26. (Docket ## 125, 126.) A few days later, on July 21, 2008, White's counsel submitted to Gerardot's counsel a more detailed report from Dr. Paranjpe, expanding on the loss of income and loss of household

3

services calculations. (Def.'s Supplemental Mot. To Strike Nitin Paranjpe, Ph.D. ("Def. Supplemental Mot.") 2, Ex. A.) This new report was dated June 23, 2008 (Def. Supplemental Mot. Ex. A), the date of the discovery deadline (*see* Docket # 104). Gerardot promptly filed his Supplemental Motion to Strike on July 24, 2008. (Docket # 130.) Although White filed a motion for extension of time to file a response to Gerardot's motions on August 1, 2008 (Docket # 131), no responses were ever filed. An interim pretrial conference was held on September 4, 2008, and the court *sua sponte* raised the matter and heard argument on Gerardot's motion. (*See* Docket # 148.)

### III. APPLICABLE LAW

Federal Rule of Civil Procedure 26 requires a party to disclose the identity of any expert witness it intends to use at trial and to submit a written report prepared and signed by the expert. Fed. R. Civ. P. 26(a)(2); *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 785 (7th Cir. 2000). This disclosure must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C). "The expert witness discovery rules are designed to aid the court in its fact-finding mission by allowing both sides to prepare their case adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 138 F. Supp. 2d 1088, 1093-94 (N.D. Ill. 2001) (citing *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000)); *see also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004) ("Formal disclosure of experts is not pointless. Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial.").

Consequently, Federal Rule of Civil Procedure 37(c) provides sanctions for failing to comply with Rule 26(a)(2)'s requirements: "the offending party is not allowed to introduce the

expert witness's testimony as 'evidence on a motion, at a hearing, or at a trial.'" *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008) (citing Fed. R. Civ. P. 37(c)(1); *Jenkins v. Bartlett*, 487 F.3d 482, 488 (7th Cir. 2007)). "This sanction is 'automatic and mandatory' unless the offending party can establish 'that its violation of Rule 26(a)(2) was either [substantially] justified or harmless.'" *Ciomber*, 527 F.3d at 641 (internal quotations and citations omitted); *see also Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996) (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)). In making the determination whether a particular violation of Rule 26(a) is justified or harmless, "the district court should consider the surprise or prejudice to the blameless party, the ability of the offender to cure any resulting prejudice, the amount of disruption to the trial that would result from permitting the use of the evidence, and the bad faith involved in not producing the evidence at an earlier date." *Spearman Indus.*, 138 F. Supp. 2d at 1094 (citing *Bronk v. Ineichen*, 54 F.3d 425, 432 (7th Cir. 1995)); *see also Keach v. U.S. Trust Co.*, 419 F.3d 626, 640 (7th Cir. 2005).

## IV. DISCUSSION

At the outset, White has apparently waived any objections to Gerardot's motions to strike by failing to respond to them. *Wolotka v. Sch. Town of Munster*, 399 F. Supp. 2d 885, 900 (N.D. Ind. 2005) (finding that the plaintiff waived any objections to an argument in the defendant's motion to strike by failing to respond to it) (citing *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1173 (7th Cir.1998); *Riley v. UOP, LLC*, 244 F. Supp. 2d 928, 934 n.5 (N.D. Ill. 2003)). Moreover, consideration of the arguments White's counsel offered at the hearing reveal that the belated disclosure was not substantially justified or harmless.

Gerardot invokes Federal Rule of Civil Procedure 37(c)(1), asserting that exclusion of

5

Dr. Paranjpe is an appropriate sanction for White's failure to comply with the requirements of Federal Rule of Civil Procedure 26. (Def. Mem. 5.) Gerardot points out that the expert report was untimely and posits that the court should reject White's argument that the report was belated as a result of a need to wait for the ruling on hedonic damages. (Def. Mot. to Strike 1; Def. Mem. 5.) In so arguing, Gerardot emphasizes that Dr. Paranjpe's report does not address hedonic damages, but rather future lost earnings and loss of household services, which have been at issue since the filing of the complaint. (Def. Mot. to Strike 1; Def. Mem. 5.) Lastly, Gerardot asks that the court reject any testimony from Dr. Paranjpe on hedonic damages because such testimony cannot satisfy the reliability standards for expert testimony set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). (Def. Mot. to Strike 2; Def. Mem. 6.) In his supplemental motion to strike, Gerardot reiterated these reasons and highlighted that White's grossly late disclosure, and at the close of discovery, precluded Gerardot from deposing Dr. Paranjpe and obtaining a rebuttal expert. (Def. Supplemental Mot. 1-2.)

At the hearing, White did not contest the untimeliness of the disclosure of Dr. Paranjpe. Instead, counsel explained that they waited to consult with Dr. Paranjpe until the court ruled on whether hedonic damages were an available remedy. Essentially, White reasoned that she did not want to risk investing in an expert that she might not be able to use. White further argued that the late disclosure did not prejudice Gerardot, since White has repeatedly offered to produce Dr. Paranjpe for deposition at the convenience Gerardot's counsel. White also contended that there is still ample time and opportunity to conduct a discovery deposition.[2] Gerardot, in turn, responded that the belated disclosure prejudiced his ability to conduct discovery because the trial

---

[2] Counsel for White made no written response to the motion to strike because they mistakenly thought they had already done so.

6

is now only two months away with much preparation left to complete. Gerardot also emphasized that White's explanation of waiting on the court's ruling on hedonic damages is no basis to deny the motion since Dr. Paranjpe did not even mention hedonic damages, focusing instead on the loss of future earnings and household services.

White has indeed failed to show that her delay was "substantially justified." *See* Fed. R. Civ. P. 37(c)(1). Although she contends that she needed to wait until the court ruled on the issue of hedonic damages before engaging Dr. Paranjpe, the issue of damages, both economic and non-economic, has been present since the outset of the case. Even more telling, and as Gerardot points out, Dr. Paranjpe's reports do not even mention hedonic damages (Def. Mem. Ex. A; Def. Supplemental Mot. Ex. A), so the suggestion that they were delayed because Dr. Paranjpe needed to address them appears disingenuous. And although the concept of hedonic damages might be something an expert can testify about (assuming, of course, that it appears in his report), the actual calculations are often excluded. *See, e.g., Richman v. Burgeson*, No. 98 C 7350, 2008 WL 2567132, at *2-5 (N.D. Ill. June 24, 2008) (discussing the admissibility of hedonic damages and finding that although the expert could testify about "the concept of hedonic damages," his testimony assigning a specific dollar amount of hedonic damages was "not sufficiently reliable or helpful to the jury and . . . therefore, inadmissible"); *Crespo v. City of Chicago*, No. 96 C 2787, 1997 WL 537343, at *2-3 (N.D. Ill. Aug. 22, 1997) (granting a motion to bar testimony on hedonic damages because its reliability was unclear and it was not helpful to the jury); *Ayers v. Robinson*, 887 F. Supp. 1049 (N.D. Ill. 1995) (evaluating expert testimony on hedonic damages under the *Daubert* analysis and concluding that it was inadmissible). Here, of course, Dr. Paranjpe offers neither the concept nor the calculations in his report and thus both

7

should be excluded.

Neither is White's late disclosure "harmless." *See* Fed. Rule Civ. P. 37(c)(1). "This is not a case where the disclosure was late by a trivial amount of time." *Musser*, 356 F.3d at 758-59. Rather, almost *sixteen months* elapsed between the February 16, 2007, deadline for expert reports and White's June 13, 2008, disclosure of Dr. Paranjpe's identity and his report of "preliminary calculations." This disclosure was also fifteen months after the deadline for rebuttal experts, and only about ten days before the close of discovery and three weeks before the deadline to challenge expert testimony. Moreover, Gerardot did not receive the more complete and formalized supplemental report until July 21, 2008, roughly seventeen months after the expert disclosures were due and almost a month *after* the discovery period closed on June 23, 2008.

On this record, the prejudice resulting from the untimely disclosure is manifest.[3] Now, with the trial two months away, Gerardot would not only need to depose Dr. Paranjpe, but also need to find a rebuttal expert who also would likely be deposed. *See Finwall*, 239 F.R.D. at 499-500 (noting that disclosure of expert reports at the end of discovery, when there would be inadequate time for the opposing party to depose the expert or engage their own rebuttal expert, is an appropriate basis to exclude the expert reports).

Although White also contends that there is plenty of time to conduct outstanding discovery, this reduces "Rule 37 to a dead echo and would empower a party, not the court, to set expert discovery deadlines." *Id*. at 498. "Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery." *Id*. at 501 (citations omitted). In

---

[3]The briefing on Gerardot's motions consumed additional time, particularly since the court waited for a response from White.

particular, adding Dr. Paranjpe now, with the trial just two months away and with numerous filings yet to be made, would distract Gerardot from what is already a heavy trial preparation. The court should also not have to move the long-set trial so as to accommodate the late introduction of Dr. Paranjpe, as this would prolong a case already nearly three years old. *See, e.g., Musser*, 356 F.3d at 758 (concluding that it was not an abuse of discretion for the trial court to determine that the additional costs in preparing a new summary judgment motion and the delay in extending the trial date were not harmless); *cf. Sherrod*, 223 F.3d at 613 (reversing the exclusion of expert testimony because a trial date had not been set and "appeared a long way off," and there was therefore "no harm" or "unfair surprise" in allowing the testimony).

"Deadlines such as those envisioned by Rule 26(a)(2)(B) and 37(c)(1) are essential to the maintenance of a smooth and orderly flow of cases." *Finwall*, 239 F.R.D. at 503 (citation omitted). In this instance, White "has the burden of showing [her] failure to timely provide the report was harmless or substantially justified," *see id*. (citing *Keach*, 419 F.3d at 639; *Salgado by Salgado v. GMC*, 150 F.3d 735, 742 (7th Cir. 1998)), but she failed to carry this burden. In sum, White waived objections to Gerardot's motions by not responding to them, and then, even though offered the opportunity to present oral argument, White failed to demonstrate either substantial justification or a convincing basis for finding the late disclosure harmless.

Accordingly, the court will GRANT Gerardot's motion and supplemental motion to strike Dr. Paranjpe and his reports. *See Ciomber*, 527 F.3d at 641 (explaining that the Rule 37(c) sanction "is 'automatic and mandatory' unless the offending party can establish 'that its violation of Rule 26(a)(2) was either [substantially] justified or harmless.'"); *Musser*, 356 F.3d at 758.

## V.  CONCLUSION

For the foregoing reasons, Gerardot's motion and supplemental motion to strike Dr. Paranjpe (Docket ## 125, 130) are hereby GRANTED.  Accordingly, White's expert witness Dr. Paranjpe and Dr. Paranjpe's reports are stricken; White is barred from relying upon any of Dr. Paranjpe's opinions; and White is precluded from calling Dr. Paranjpe as an expert witness at trial.

SO ORDERED.

Enter for the 10th day of September, 2008.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
