UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ARLINTHIA WHITE, Individually and as<br>Personal Representative of the Estate of<br>Derrick Ford, Deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:05-CV-0382 |
| | ) | |
| -vs- | ) | Mag. Judge Robert B. Cosbey |
| | ) | |
| MARK GERARDOT, in his<br>Individual Capacity, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE PORTIONS OF OPINION OF DARRELL L. ROSS, Ph.D.

### I. Introduction

Plaintiff filed this 42 USC §1983 and §1988 lawsuit against Fort Wayne Police Detective Mark Gerardot in his individual capacity, as the result of the January 10, 2004 fatal shooting of Derrick Ford in violation of Ford's Fourth and Fourteenth Amendment rights.

Defendant Gerardot contends that he shot Derrick Ford in self-defense as Ford turned toward Gerardot with his hands at his mid-section and that Ford had what appeared to be a gun in his hands. In at least one of his statements to internal affairs, Gerardot maintained that Ford was "squared up" with Gerardot when he shot him. However, the witnesses' statements and forensic evidence do not support Gerardot's version of events and further indicate that Derrick Ford was not a threat to *anyone* when Gerardot fatally shot him.

Witnesses maintain that Ford had his hands on the front passenger door handle

when Gerardot approached him and that ***Gerardot shot Ford as Ford had his hands in the air and was turning towards Gerardot***. Several witnesses have confirmed that Ford did not have a gun in his possession. More importantly, a gun was never recovered from Ford or near his body, no evidence has been produced to support Defendant's claim that Ford fired a gun and there were no casings recovered from the scene that were attributed to any gun other than Gerardot's service weapon.

Defendant intends to rely on the testimony of Darrell L. Ross, Ph.D., an expert in law enforcement procedure. Dr. Ross opines that Officer Gerardot used objectively reasonable force, that he responded prudently and followed proper police procedure, that Derrick Ford's actions required Officer Gerardot to use lethal force to protect himself, that Officer Gerardot had probable cause to form a belief that he was about to be shot by Derrick Ford, that the circumstances presented a dangerous, uncertain and rapidly tense situation, that Gerardot's actions were consistent with Fort Wayne's policies and procedures, and that Fort Wayne has not abdicated in its responsibility to train Officer Gerardot. Dr. Ross also offers a number of "opinions" in an attempt to bolster Officer Gerardot's version of the events. These "opinions" improperly intrude upon the province of the jury.

As this Court has recognized, "Seventh Circuit precedent . . . prohibits expert witnesses from offering opinions or legal conclusions on issues that will determine the outcome of a case." *Klaczak v Consol. Med. Transp. Inc.,* No 96 C 6502, 2005 WL 1564981, at *3 (N.D. Ill. May, 26, 2005). After hearing all of the evidence, the jury will be in as good or better position than Dr. Ross to determine whether Gerardot had a sufficient factual basis to reasonably believe that Derrick Ford posed a threat and whether deadly force was reasonable under the circumstances.

## II.  Standards Applicable to Expert Testimony

It is well established that a witness may testify as an expert if (1) the proffered witness is actually an expert; (2) the expert testifies to scientific, technical, or specialized knowledge; and (3) the expert's testimony assists the trier of fact. Fed.R.Evid. 702; *United States v. Velasquez*, 64 F.3d 844, 849 (3rd Cir. 1995). Additionally, testimony "in the form of an opinion or inference otherwise admissible is not objectionable *because it embraces an ultimate issue to be decided by the trier of fact.*" Fed.R.Evid. 704(a).

Trial courts are charged with the function of acting as "gatekeepers" to ensure that all scientific testimony admitted is not only relevant, but reliable. See *Kumho Tire Co v Carmichael*, 526 US 137 (1999); and *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579, 590 (1993).  When considering a motion in limine to preclude expert testimony, FRE 702 provides that a trial judge must first determine, pursuant to FRE 104(a), "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist a trier of fact to understand or determine a fact in issue." *Daubert,* 509 US at 592. Specifically, FRE 702 provides as follows:

> If scientific technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert, supra*, the United States Supreme Court abandoned the well-established "general acceptance" threshold for scientific testing originally set forth in *Frye v United*

*States*, 293 F 1013 (DC Cir 1923)[1], and specifically defined the trial court's special role as

a "gatekeeper" with regard to expert opinion testimony and evidence, writing:

> The trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, <u>but reliable</u>. *Id.*, 509 US at 589.  (Emphasis added).

The Court further established the following non-exclusive, four-part test to be used

in determining whether the proposed expert testimony or evidence is reliable:

> (1)   Can the underlying scientific theory or technique be tested;
>
> (2)   Has the theory or technique been subjected to peer review and publication;
>
> (3)   Is there a known or potential rate of error for the particular scientific technique; and
>
> (4)   Whether the underlying scientific technique has achieved a particular degree of acceptance within the relevant scientific community. *Id.* at 592-594.

Additional factors that may be considered are: (1) "the existence and maintenance

of standards controlling the technique's operation;" (2) "the relationship of the technique

to methods which have been established to be reliable;" (3) the qualifications of the expert;

and (4) "the non-judicial uses to which the method has been put." *In re Paoli R.R. Yard*

*PCB Litigation*, 35 F.3d 717, 742 n.8 (3rd Cir. 1994). These factors are non-exclusive and

no one of the factors weighs more heavily than another; the approach to determining the

admissibility of expert testimony is a flexible one. *Daubert*, 509 U.S. at 594; *Kumho Tire,*

526 U.S. at 152; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3rd Cir. 1999); *In re Paoli*,

---

[1] According to the Supreme Court, the *Frye* test had been supplanted by adoption of the Federal Rules of Evidence, particularly FRE 702.  *Daubert*, *supra,* 509 US at 586-589.

35 F.3d at 742 ("a district court should take into account all of the factors listed by *Daubert* . . . as well as any others that are relevant.").

Even if an expert's testimony is deemed reliable, it must be excluded if it is not relevant and it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue. . . ." *United States v Hall*, 93 F.3d 1337, 1342 (7th Cir 1996); *see also United States v. Gallardo,* 497 F.3d 727, 733 (7th Cir. 2007); *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000).

### III.  Portions of Dr. Ross' Opinion Are Not Admissible Pursuant to Rule 702

In this case, Defendant intends to rely on the opinions Dr. Ross in an effort to, somehow, establish that Gerardot's use of deadly force was reasonable. Dr. Ross opines that Officer Geradot used objectively reasonable force, that he responded prudently and followed proper police procedure, that Derrick Ford's actions required Officer Gerardot to use lethal force to protect himself, that Officer Gerardot had probable cause to form a belief that he was about to be shot by Derrick Ford, that the circumstances presented a dangerous, uncertain and rapidly tense situation, that Gerardot's actions were consistent with Fort Wayne's policies and procedures, and that Fort Wayne has not abdicated in its responsibility to train Officer Gerardot. Dr. Ross also offers a number of "opinions" in an attempt to bolster Officer Gerardot's version of the events. These  "opinions" improperly intrude upon the province of the jury.

Dr. Ross' opinion includes a number of impermissible legal conclusions, including the following:

• Officer Gerardot used objectively reasonable force when he shot Mr. Ford in

self-defense (Docket No. 71-2, pp 4-5).

• "[T]hese incidents created a state of panic and chaos within the crowd placing them and the surrounding community in imminent danger." (Docket No. 71-2, p 8).

• "Officer Gerardot could not have known what the person may be contemplating." (Docket No. 71-2, p 8).

• "Clearly a highly dangerous situation had been created by the shooter which required police response." (Docket No. 71-2, p 8).

• "As the result of the discharge of numerous rounds into an unprotected and unsuspecting crowd of people attempting to leave the premises, it was reasonable to believe that this person not only committed a crime but also presented a continued dangerous threat of serious injury or death requiring apprehension." (Docket No, 71-2, p 8).

• Derrick Ford's actions required Officer Gerardot to use lethal force to protect himself (Docket No. 71-2, p 9)

• "Officer Gerardot had probable cause to form a belief that he was about to be shot by Mr. Ford and employed lethal force in defense of his life." (Docket No. 71-2, p 11)

• The shooting was justified according to the Fort Wayne Police Department investigation (Docket No. 71-2, p 11).

• The Prosecuting Attorney determined that Officer Gerardot acted within his legal discretion (Docket No. 71-2, p 11).

• "Combing the circumstances of this incident with the sudden furtive actions of Mr. Ford at the Taurus, and the perceptions formed by Officer Gerardot of the circumstances and actions of Mr. Ford, Officer Gerardot used objectively reasonable force for self protection." (Docket No. 71-2, pp 11-12).

• "The circumstances of this incident clearly represented a dangerous, an uncertain and rapidly tense situation." (Docket No. 71-2, p 12)

• "It was reasonable for Officer Gerardot to form the belief that Mr. Ford was indeed the shooter." (Docket No. 71-2, p 12).

• "Officer Gerardot justifiably formed the belief that he would be shot, and fired in self defense (Docket No. 71-2, p 13).

-6-

- "It would be reasonable for a law enforcement officer who confronted a person who had previously shot into the crowd, who ran, stopped, moved his arms, and then looked at him over his shoulder, move his arms again, with his back turned, and hands concealed, to conclude that the person was checking the proximity between he and the officer which would further place the officer in peril." (Docket No. 71-2, p 14).

- "Based on the actions of Mr. Ford, Officer Gerardot properly formed the belief that he was in immediate danger of being shot and within a diminished response time formed the belief that he needed to protect himself." (Docket No. 71-2, p 15).

- "Under these circumstances, a reasonable officer, as Gerardot determined, could well fear for his safety. He could reasonably believe that Mr. Ford has a firearm and was about to shoot, An officer would have probable cause to believe that Mr. Ford posed a threat of serious physical harm. . . . Officer Gerardot could not predict Mr. Ford's behaviors and formed the perception that he was in immediate danger of being shot warranting the use of lethal force in self-defense." (Docket No. 71-2, p 16).

- Fort Wayne Police Department did not abdicate their responsibility in training and directing Officer Gerardot (Docket No. 71-2, pp 16-18)

- "Officer Gerardot's response was consistent with this policy directive [to shoot at center body mass] in concert with the amount of extensive firearms training that Officer Gerardot has completed, and based on his perceptions in response to Mr. Ford's behaviors at the Taurus." (Docket No. 71-2, p 18).

- FWPD shooting investigation team concluded that Officer Gerardot acted within the policy. (Docket No. 71-2, p 18).

- "Officer Gerardot acted in accordance with his training, departmental force policy, and perception of sustaining serious bodily injury when he fired four rounds from his departmental issued weapon in defense of his life." (Docket No. 7102,, p 18).

- "[R]egardless of his training or departmental policy, Officer Gerardot acted properly when he discharged his firearm to protect his life." (Docket No. 71-2, p 18).

All of the above "opinions" are impermissible legal conclusions and invade the province of the jury. As this Court has recognized, "Seventh Circuit precedent . . . prohibits expert witnesses from offering opinions or legal conclusions on issues that will determine

the outcome of a case." *Klaczak v Consol. Med. Transp. Inc.,* No 96 C 6502, 2005 WL 1564981, at *3 (N.D. Ill. May, 26, 2005).  Here, Dr. Ross' opinion that Officer Gerardot perceived Ford as a threat and reasonably believed that he had to shoot to defend himself improperly intrudes upon the province of the jury. After hearing all of the evidence, the jury will be in as good or better position than Dr. Ross to determine whether Gerardot had a sufficient factual basis to reasonably believe that Derrick Ford posed a threat and whether deadly force was reasonable under the circumstances.  As the Seventh Circuit  concluded in *Klaczak*, "the jury is well positioned to make [an] . . . assessment in the absence of a battle of expert testimony about what parties knew or did not know . . . ." *Id.* at *2.

Moreover, as this Court has recognized, many of the crucial facts in this case are in dispute. The most pertinent dispute is whether Derrick Ford had his hands in the air surrendering at the time that Officer Gerardot shot him, as witnesses have testified. Officer Gerardot disputes this fact. Thus, if this Court were to allow Dr. Ross to offer his opinion as to whether Gerardot reasonably perceived a threat and reasonably believed he was justified in shooting Derrick Ford, "the Court, in essence, would be allowing [Dr. Ross] to, as an expert, make and relay credibility findings to the jury regarding the witnesses' testimony. Such testimony is improper . . . ." *McCloughan v City of Springfield,* 208 F.R.D. 236, 239 (C.D. Ill. 2002). "While [an expert] is free to explain the conclusions he draw from the . . . evidence, he may not opine as to whether or not he believes that the officer['s] prior statements and/or testimony is credible. Such testimony would exceed [the expert's] expertise and would invade the province of the jury." *Sonnier v Field*, No 2:05-cv-14, 2007 WL 576655, at *4 (Feb. 21, 2007); *see also Richman v Sheahan*, 415 F.Supp. 2d 929,

941-44 (N.D. Ill. 2006). Just as Plaintiff's experts are precluded from attacking Officer Gerardot's credibility, Dr. Ross is not permitted to bolster Officer Gerardot's credibility.

Furthermore, the ultimate issue that the jury will be called upon to decide in this case is whether Gerardot used unreasonable deadly force against Ford. See *Graham v Connor,* 490 U.S. 386 (1989); *Tennessee v Garner,* 471 U.S. 1 (1985); *see also* Federal Civil Jury Instructions of the Seventh Circuit No. 7.08. This inquiry centers on whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him]." *Graham,* 490 U.S. at 387.

The Seventh Circuit Court of Appeals has excluded expert testimony on issues that are ultimately the province of the jury:

> The jury, after having heard all of the evidence presented, was in as good a position as the experts to judge whether the force used by the officers to subdue Thompson was objectively reasonable given the circumstances in this case. Introducing two experts to testify that Officer Hespe used excessive force would have induced the jurors to substitute their own independent conclusions for that of the experts. In other words, they would have been "induced to decide the case on an improper basis . . . rather than on the evidence presented . . ." which is precisely whey the evidence should have been excluded. [*Thompson v. City of Chicago,* 472 F.3d 444, 458 (7th Cir. 2006) (citations omitted).]

Considering the foregoing precedent, Dr. Ross' "opinion" regarding Officer Gerardot's perceptions, actions and the reasonableness of such perceptions and actions should be excluded.

Dr. Ross further purports to offer an "opinion" regarding the reasonableness of Officer Gerardot's response to the dispatch of a gang fight (Docket No. 71-2, p 7) and the reasonableness of Officer Gerardot's actions before his encounter with the shooter (Docket No. 71-2 pp 7-8). These "opinions" are not relevant to the ultimate issue of whether

Gerardot used unreasonable deadly force against Mr. Ford. These "opinions" are not likely "to assist the trier of fact to understand the evidence or determine a fact in issue . . . ." and, therefore, should be excluded as irrelevant. *Hall,* 93 F.3d 1342; *Gallardo*, 497 F.3d 733; *Walker*, 208 F.3d 586.

Similarly, this Court should preclude Dr. Ross' "opinion" that "Officer Gerardot's immediate response by exiting his patrol car in uniform, and yelling to the crowd "police, get down," most assuredly reduced the likelihood of prolonged violence and protected others from sustaining injury." (Docket No. 71-2, pp 7-8). This evidence is irrelevant to the ultimate issue of whether Officer's use of deadly force was reasonable under the circumstances. Furthermore, this "opinion" is based entirely on speculation and conjecture and is not at all supported by any evidence or testimony. When determining whether an expert's testimony is admissible, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v, Joiner*, 522 U.S. 136, 146 (1997)).  As Supreme Court wrote: "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146. The Seventh Circuit has consistently held that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to judicial process." *Zenith Elec. Corp. v. WH-T Broad. Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005). Accordingly, Dr. Ross' opinion should be excluded in this regard.

In summary, Dr. Ross has offered a lengthy "opinion" in this matter, much of which

-10-

clearly invades the province of the jury and improperly bolsters the credibility of Officer Gerardot. In addition to the opinions discussed above, Dr. Ross comments upon Officer Gerardot's perceptions, his cognitive process, mentally formulating a strategy, initiating motor response, and the effects on the sympathetic nervous system in a stressful situation. (Docket No. 71-2, pp 13-15). Just as this Court limited Plaintiff's police procedures expert, W. Kenneth Katsaris, Dr. Ross' testimony should be limited to the proper police procedure to be employed in a situation such as one facing Gerardot on the night of the shooting, limited to the facts and circumstances known to Officer Gerardot at the time. Dr. Ross should be precluded from offering any testimony regarding the post-shooting investigation or whether Gerardot's shooting was justified, reasonable or in accordance with Department policy or whether the Fort Wayne Police Department properly trained Gerardot.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order precluding the Defendant from offering portions of the opinion of Darrell L. Ross, Ph.D. that are not supported by the evidence, that constitute a legal conclusion, that are not relevant and that invade the province of the jury.

Respectfully submitted,

s/Robert M. Giroux, Jr.
Robert M. Giroux, Jr.
Fieger, Fieger, Kenney, Johnson & Giroux, P.C.
19390 West Ten Mile Road
Southfield, MI 48075
Phone: (248) 355-5555
Fax: (248) 355-5148

Dated: October 1, 2008

## Certificate of Service

I hereby certify that on October 1, 2008, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/Robert M. Giroux, Jr.
Robert M. Giroux, Jr. (P-47966)
Fieger, Fieger, Kenney, Johnson & Giroux, P.C.
19390 West Ten Mile Road
Southfield, MI   48075
(248) 355-5555